UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY SMITH, individually; STEPHANIE SMITH, individually; and WESLEY SMITH and STEPHANIE SMITH as successors-in-interest to JEFFREY SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>OFFICER M. WHEAT, et al.,<br><br>Defendants. | No. 2:21-cv-01859-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

In bringing the present action, Plaintiffs Wesley Smith and Stephanie Smith, both individually and as successors-in-interest to their deceased son, Jeffrey Smith (hereinafter "Plaintiffs") allege that eleven correctional officers at the High Desert State Prison ("HDSP") in Susanville, California, Defendants Wheat, Rickett, Byers, Ramos, Zaun, Sevy, Mendoza, Villegas, Lee, Staub and Hicks (collectively "Defendants") violated Jeffrey's constitutional rights under the Eighth and Fourteenth Amendments when they failed to properly intervene and stop a stabbing attack against Jeffrey, who was incarcerated at HDSP, by two other inmates.  Plaintiffs' currently operative First Amended Complaint ("FAC") alleges causes of action brought pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments to the United States

Constitution.  Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' lawsuit, alleging that the causes of action pled fail to state viable claims for various reasons under Federal Rule of Civil Procedure 12(b)(6).[1]  As set forth below, Defendants' Motion is DENIED.[2]

## BACKGROUND[3]

According to the FAC, on October 11, 2019, Plaintiffs' decedent, Jeffrey Smith ("Jeffrey") was walking around an inmate recreation yard at HDSP at about 11:30 a.m.  The yard was under the control and supervision of HDSP staff, including Defendants, when two other inmates began to attack Jeffrey with manufactured stabbing instruments approximately 10 inches in length.  Jeffrey was purportedly initially able to deter the attack for about 20 seconds before tripping and falling to the ground at which time the inmates began to assault him with the prison-made knives.  FAC, ECF No. 3, ¶ 14.

Within 8 seconds after the assault began in earnest, Defendants responded and began to use chemical weapons in order to break up the altercation, at which time Jeffrey was pleading with the correctional officers to intervene and help him fend off the attackers.  Id. at ¶¶ 15-17.  When 11 Oleoresin Capsicum ("OC") grenades and 12 applications of pepper spray failed to deter the assailants, Defendants ultimately intervened with batons and separated Jeffrey from the two inmates.  Id. at ¶¶ 15, 18.  The FAC asserts that this occurred approximately 45 seconds after Defendants arrived at the location of the fight, which had started about 28 seconds beforehand.  Jeffrey succumbed from his stab wounds shortly after the altercation.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

[2] Because the Court determined that oral argument would not be of material assistance, this Motion was submitted on the briefs in accordance with Local Rule 230(g).

[3] This section is taken directly, and in some instances verbatim, from the allegations contained in Plaintiffs' FAC.

2

In now moving to dismiss, the defense argues that the above allegations on their face fail to demonstrate any constitutional violation because "Defendants did not fail to intervene or otherwise fail to reasonably respond to the attack." Defs.' Mot, ECF 11-1, 2:3-4. Alternatively, Defendants contend that they are entitled to qualified immunity in any event because Plaintiffs cannot point to any "clearly established" constitutional right that was violated under the circumstances.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

///

1   Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket
2   assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and
3   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard
4   to see how a claimant could satisfy the requirement of providing not only 'fair notice' of
5   the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
6   Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
7   relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their
8   claims across the line from conceivable to plausible, their complaint must be dismissed."
9   Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
10  actual proof of those facts is improbable, and 'that a recovery is very remote and
11  unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## ANALYSIS

15  As indicated above, both of Plaintiffs' causes of action brought pursuant to
16  42 U.S.C. § 1983 are predicated upon constitutional violations.  First, under the Eighth
17  Amendment, Plaintiffs aver that by "failing to physically intervene to quell the attack for
18  an extended period of time," Defendants "consciously disregarded . . . substantial and
19  obvious risks of harm to decedent." FAC, ¶ 32.  To the contrary, according to Plaintiffs,
20  Defendants "ignored realistic opportunities to physically intervene in the attack and
21  otherwise unreasonably responded to the attack with ineffectual chemical weapons." Id.
22  at ¶ 21.  Second, under the Fourteenth Amendment, Plaintiffs allege that Defendants'
23  "conscious disregard of the likelihood of likelihood of substantial harm to decedent"
24  unlawfully deprived them of the companionship of their son in violation of their
25  substantive due process rights. Id. at ¶ 38.
26  Defendants contend that because their response to the attack was reasonable,
27  they cannot be held responsible under either constitutional theory.  Moreover, according
28  to Defendants, even were a constitutional violation to be successfully asserted, they

should be entitled to qualified immunity in any event because the circumstances fail to give rise to any "clearly established" constitutional right.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994): Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). Two requirements must be satisfied in order to demonstrate a violation in that regard, however. First, the alleged deprivation has to be "objectively, sufficiently serious," and secondly, the conduct of the official must evince "deliberate indifference to inmate health and safety." Farmer, 511 U.S. at 834.

Defendants do not dispute that the alleged deprivation was sufficiently serious; they could not realistically do so since the attack in question resulted in Jeffrey's death. Instead, Defendants contend that the facts as alleged by Plaintiffs themselves show that no deliberate indifference could exist, since Defendants responded to the attack first by using chemical agents and then by physically intervening through the use of batons to separate the combatants within a period of a little over a minute after the altercation began. As even Defendants concede, however, the issue really boils down to whether they had a realistic opportunity to intervene and prevent Jeffrey's death but failed to do so. Defs.' Mot, ECF No. 11-1, 4:14-16. If that opportunity was present, Defendants can be liable under the Eighth Amendment. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000); Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003).

Plaintiffs argue in opposition to this Motion that any assessment in this regard is a question of fact that cannot be decided in the context of the present pleadings challenge. The Court agrees. According to the FAC, the attack occurred in a recreation yard subject to supervision by HDSP staff, including Defendants. Defendants nonetheless did not respond to the location of the fight for nearly thirty seconds. Then, although two inmates were using 10-inch long prison-made staffing implements apparently directed to Jeffrey's head, Defendants allegedly waited 45 seconds before resorting to batons to separate the inmates, despite Jeffrey's pleas for help in fending off the attack. Whether

5

it was reasonable to use the non-lethal deterrent of chemical weapons in the face of such a life-threatening attack before physically intervening with batons is unquestionably not something this Court can determine on a motion to dismiss.

The result is no different on the other theories advanced by Defendants. Defendants contend that Plaintiffs' alleged substantive due process violation under the Fourteenth Amendment is limited to official conduct that "shocks the conscience". Defs.' Mot, 9: 21-23, citing Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). To show such conduct, "actual deliberation" by an officer in deciding how to respond is required. Id. Defendants argue that the timeframes involved here could not, as a matter of law on the basis of the pleadings, have permitted the requisite deliberation. Again, for the same reasons already articulated above, the Court disagrees. Whether or not waiting 45 seconds before escalating from chemical deterrents to physical intervention was sufficient for deliberation, and "shocks the conscience" in the face of an attack by two inmates using 10-inch knives, is unquestionably beyond the purview of the present motion.

Finally, Defendants argue, at a minimum, that any violation under the facts of the present matter gives rise to qualified immunity because a reasonable officer in the position of Defendants could not have known that his conduct could have violated "clearly established" constitutional rights. It is true that qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The rule permits officials to undertake their responsibilities without fear they will be held liable for actions that appeared reasonable at the time but were later held to violate statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). Qualified immunity consequently prohibits second-guessing life and death decisions by officers who must make on-the-spot choices in dangerous situations, even if the situation could arguably

///

6

have been handled differently. See, e.g., City and County of San Francisco, Calif. v. Sheehan, 575 U.S. 600, 616-17 (2015).

Courts analyze qualified immunity under a two-prong test. First, it must be discerned whether the alleged facts constitute a constitutional violation. Second, if such a violation did occur, a court must find whether or not the constitutional right at issue was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Plaintiffs bear the burden of demonstrating that the constitutional right in question was clearly established at the time the official acted. May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997).

Here, as stated above, it is unquestioned that Jeffrey had a clearly established constitutional right given the Supreme Court's recognition that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. at 833. The question is whether the circumstances of this matter in fact point to a constitutional violation, and as stated above that is not a determination the Court can now make. This is not a situation where the officers were faced with an instantaneous decision such that it would be improper, in hindsight, to question that decision. To the contrary, the facts as alleged in the FAC indicate that Defendants had some 45 seconds in which to decide whether to physically restrain the combatants in whatever way necessary. As Plaintiffs observe, "45 seconds is a long time when one is being attacked by two inmates with 10-inch blades." Pls.' Opp., ECF No. 13, 8:14-15.

///
///
///
///
///
///
///
///

**CONCLUSION**

Based on all the foregoing, Defendants' Motion to Dismiss (ECF No. 11) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: September 1, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE